IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DAVID PICRAY,                                    Case No. 6:14-cv-00918-AA
                                                        OPINION AND ORDER
            Plaintiff,

      v.

JEFFREY PARRISH, GABRIEL
SAPP, and the CITY OF
CORVALLIS, a political
subdivision of the State
of Oregon,

            Defendants.
_____

David C. Force
96 E. Broadway, Suite 2
P.O. Box 10972
Eugene, Oregon 97440
      Attorney for plaintiff

Robert E. Franz, Jr.
Law Office of Robert E. Franz, Jr.
P.O. Box 62
Springfield, Oregon 97477
      Attorney for defendants


Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants the City of Corvallis ("City"), Jeremy Parrish,[1] and Gabriel Sapp move for summary judgment against plaintiff David Picray pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendants' motion is granted and this case is dismissed.

**BACKGROUND**

On May 11, 2007, Sapp, a City police officer, observed plaintiff's truck weaving within its lane of traffic for several blocks. Sapp then witnessed plaintiff park his truck, stumble upon exiting, and walk towards a closed grocery store. Sapp pulled over and initiated conversation with plaintiff, during which he noticed the smell of alcohol and that plaintiff's words were slurred. Plaintiff consented to taking field sobriety tests; he failed two out of three tests. However, after plaintiff blew a 0.00 on the portable breathalyzer machine, Sapp decided he was not driving under the influence and released him from the scene.

Plaintiff filed a formal complaint with the City Police Department as a result of his May 11, 2007, encounter with Sapp. After an investigation, the City determined that Sapp acted within Oregon law and department policy. Plaintiff lodged a grievance with the Community Police Review Board, which met on November 7, 2007, and found that the City's investigation and disposition of plaintiff's prior complaint were proper. Sapp was not disciplined.

On May 11, 2010, Gary Rodgers called 911 reporting that plaintiff had entered the Northwest Realty Consultants' office,

---

[1] Sued erroneously as "Jeffrey." Parrish Decl. at 1.

Page 2 - OPINION AND ORDER

where Rodgers worked, to angrily complain about real estate "For Sale" signs located in public right-of-ways. Sapp was dispatched to the scene to investigate, wherein Rodgers stated that plaintiff threatened to destroy Northwest Realty Consultants' signs before leaving the premises.

Shortly thereafter, Sapp was called to the front reception area of the police station to speak with plaintiff regarding Rodgers' alleged unlawful use of 911. Plaintiff also wanted to know whether any charges were being filed against him; Sapp assured plaintiff that he was not being charged with any crime. Plaintiff and Sapp then discussed the removal of signs. Specifically, Sapp informed plaintiff that he did not have a legal basis to remove any real estate signs from public property. Plaintiff disagreed and read part of the City Municipal Code ("CMC") to Sapp, which he was carrying with him on a piece of paper.[2] Sapp warned plaintiff that

---

[2] In pertinent part, the provisions of the CMC that plaintiff relies on specified in May 2010 that "[n]o person . . . shall post, stick, stamp, paint, or otherwise affix or cause to be done by another any handbill or advertisement upon any building, wall, or part thereof, or upon any sidewalk, crosswalk, curb or curbstone, lamppost, hydrant, traffic control or directional sign, shade tree, or tree box or other public place . . . except as permitted in Section 107 of the Land Development Code"; "anyone" may remove or destroy "[a]ny handbill or advertisement prohibited by this Section." CMC 5.03.020.020, 5.03.020.060. The Land Development Code ("LDC"), in turn, exempts signs - i.e. those "constructed of weather-resistant paper, cloth, wood, plastic, metal, or other material with sufficient structural integrity to withstand wind and moisture, so as to maintain appearance and service for the term of use" - from CMC 5.03.020.020 and CMC 5.03.020.060. See LDC 1.6.30, 4.7.50(f), 4.7.70(j), 4.7.120.03, 107.02, 107.07(d), 107.09(I), 107.17 (2010); Force Decl. Ex. 1, at 2. In sum, real estate signs - such as those advertising a "For Sale" property - are allowed on public property with a permit (or without a permit if temporary) and may only be removed by the Director with prior notice. Id.

he should contact an attorney before removing any more signs. Plaintiff replied that he had sat in the City Manager's office and was promised that the sign issue would be addressed. Additionally, he remarked that he had been thrown out of the City Planning Department because they disputed whether temporary signs were subject to the CMC, as opposed to the LDC, when he tried to inform them of their enforcement duties.

Later on May 11, 2010, Kristie Williams called 911 reporting that plaintiff had taken one of the "For Sale" signs, owned by her realtor Keller Williams, out of the median in front of her house and thrown it in her yard. Along with Sapp, Parrish and his training officer, Ryan Eaton, were dispatched in response. Parrish and Eaton located plaintiff and initiated a stop not far from Williams' residence. As Parrish approached the truck, plaintiff stated that he was recording their conversation. Although plaintiff was uncooperative and profane, he admitted to taking the "For Sale" sign from the median in front of Williams' home. Parrish noticed, in plain view, two Bula Realty signs in the back of plaintiffs' truck; plaintiff conceded to taking those signs as well because they were placed on public property.

While Parrish and Eaton with plaintiff, Sapp drove over to Williams' residence, wherein Williams she recounted the following events:

> she was standing outside her home with her real estate
> agent, Richard Moss, who had previously placed two "For
> Sale" signs, one in her front yard and the other in the
> median in front of her residence. Plaintiff drove by in
> a green truck and honked his horn, yelled, and flipped
> them off by waving his middle finger. Williams went

Page 4 - OPINION AND ORDER

indoors, after which Moss called to inform her that plaintiff was down the street; she observed him out of her window removing the real estate sign from the median and throwing it onto her front yard. Williams went outside and asked plaintiff what he was doing. He yelled at her about real estate signs and the CMC while waving a piece of paper in his hand. Williams told plaintiff that she was going to call the police. Plaintiff left as she dialed 911. While she was on the telephone, plaintiff parked his truck, got out of the vehicle, and started walking towards Williams, yelling again about the CMC. She went inside to avoid any further conflict because she was concerned about her safety. Similar "For Sale" signs had disappeared from the median in front of her home on two prior occasions; during one of these instances, she witnessed plaintiff taking the sign and placing it in his truck.

Sapp then responded to the scene of Parrish and Eaton's traffic stop, where he relayed the information he had heard from Williams and learned that plaintiff had two Bula Realty signs in the back of his truck.

Sapp reiterated to plaintiff that, according to the City Police Department and the City Attorney's Office, he was not authorized to eliminate real estate signs from public property. After Sapp, Parrish, and Eaton conferred, Parrish issued two citations to plaintiff under CMC 5.03.090.050 (Petty Theft) and CMC 5.03.090.030.02 (Tampering with Property).[3] David Coulombe, the Deputy City Attorney, reviewed the citations, police reports, and relevant CMC provisions, and concluded there was probable cause to

---

[3] At all relevant times, CMC 5.03.090.030.02 stated "[n]o person shall, with intent to cause substantial inconvenience to the owner or another person, and having no right to do so nor reasonable ground to believe that the person has such a right, tamper or interfere with property of another." Similarly, CMC 5.03.090.050 makes it unlawful to "take, appropriate, obtain, or withhold property from an owner thereof, where the value of the property in a single or aggregate transaction is under $50."

Page 5 – OPINION AND ORDER

prosecute plaintiff.

On May 21, 2010, plaintiff appeared pro se at the City Municipal Court and filed a demurrer and motion to enjoin related to his May 11, 2010 citations. On May 28, 2010, Coulombe moved to appear on behalf of the City in a violation matter. On June 9, 2010, the Municipal Court granted Coulombe's motion, allowing the City Attorney's Office to appear only for written argument, while requiring Parrish to make any oral argument on behalf of the City per standard procedure. On July 2, 2010, Coulombe filed an opposition to plaintiff's pro se motion. On August 6, 2010, the Municipal Court sent out a brief status report indicating that it would rule on plaintiff's pro se motion by August 20, 2010. The Municipal Court took no subsequent action such that, on June 13, 2012, plaintiff's citations were dismissed for lack of speedy trial.

On June 6, 2014, plaintiff filed a complaint in this Court, alleging the following claims premised on his 2007 complaints and 2010 citations: (1) deprivation of his First Amendment rights in violation of 42 U.S.C. § 1983; (2) deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983; and (3) common law malicious prosecution. On May 4, 2015, defendants filed the present motion for summary judgment.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact

and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

The central issue to be decided in this case is whether any of plaintiff's federal or state rights have been violated by defendants' actions.

I.   Evidentiary Objection

Plaintiff objects to portions of the sworn statements of Williams and Rodgers as hearsay, irrelevant, or improper legal

Page 7 - OPINION AND ORDER

conclusion. Plaintiff also challenges Williams and Rodgers' account of his behavior on May 11, 2010 - i.e. he asserts that their declarations are "entirely false" because they describe him as angry, loud, and threatening, whereas he was actually calm, polite, and composed at all times. Pl's Resp. to Mot. Summ. J. 7-8.[4]

The Court "is capable of independently resolving conflicts in the record and questions of admissibility," and therefore declines to strike the evidence at issue. Cascadia Wildlands v. Bureau of Land Mgmt., 2012 WL 6738275, *3 n.6 (D.Or. Dec 21, 2012) (citation omitted); see also Perez-Denison v. Kaiser Found. Health Plan of the N.W., 868 F.Supp.2d 1065, 1088-89 (D.Or. 2012) (denying an evidentiary objection as moot where "the evidence moved against does not change the recommendation that [the defendant's summary judgment motion be] granted"). Moreover, plaintiff's mere disagreement with Williams and Rodgers' version of events is not a sufficient basis to have that evidence stricken, especially because plaintiff does not dispute Parrish and Sapp's attestations regarding the contents of Williams and Rodgers' reports or that this evidence was introduced to establish probable cause. See Hart v. Parks, 450 F.3d 1059, 1066-67 (9th Cir. 2006) ("[p]olice may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause") (citations omitted). Were these disputed facts material, which they are not, plaintiff's declaration would simply preclude summary judgment, as the Court

---

[4] Plaintiff did not numeralize his response brief such that the Court refers to the page numbers assigned in the docket.

Page 8 - OPINION AND ORDER

cannot make "[c]redibility determinations or weigh the evidence" at this stage in the proceedings. <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 150 (2000). Plaintiff's evidentiary objection is denied.

## II.  <u>Federal Claims</u>

To prevail on a claim under 42 U.S.C. § 1983,[5] a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. <u>L.W. v. Grubbs</u>, 974 F.2d 119, 120 (9th Cir. 1992), <u>cert. denied</u>, 508 U.S. 951 (1993).

It is undisputed that the individually named defendants qualify as state actors for the purposes of 42 U.S.C. § 1983. Accordingly, this case initially hinges on whether Parrish or Sapp violated plaintiffs' constitutional rights, or are otherwise entitled to qualified immunity. Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional

_____

[5] In Oregon, claims under 42 U.S.C. § 1983 are subject to a two-year statute of limitations. <u>Sain v. City of Bend</u>, 309 F.3d 1134, 1139 (9th Cir. 2004) (citing Or. Rev. Stat. § 12.110). A claim is accrues under federal law "when the plaintiff knows or has reason to know of the injury which is the basis of the action." <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991-92 (9th Cir. 1999). In this case, defendants expressly raised the statute of limitations as a basis for summary judgment, but plaintiff wholly neglected to address this issue. <u>See generally</u> Pl.'s Resp. to Mot. Summ. J.; <u>see also</u> <u>Bojorquez v. Wells Fargo Bank, NA</u>, 2013 WL 6055258, *5 (D.Or. Nov. 7, 2013) ("[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Regardless, plaintiff's claims fails on their merits.

Page 9 - OPINION AND ORDER

rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citations omitted). If the government actor reasonably believed that his or her conduct complied with the law, summary judgment based on qualified immunity is appropriate. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236-44 (2009); <u>see also</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

A.    <u>First Amendment Claim</u>

Plaintiff alleges that he was cited and prosecuted in retaliation for his complaints against Sapp, for his "expressive conduct" in removing "illegal advertisement[s] from the public right of way," and for reporting defendants' conduct to the Corvallis Gazette-Times newspaper. Compl. ¶ 8.

To demonstrate retaliation in violation of the First Amendment, the plaintiff must first prove the defendant "took action that would chill or silence a person of ordinary firmness from future First Amendment activities." <u>Skoog v. Cnty. of Clackamas</u>, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (citations omitted). The plaintiff must also prove that the defendant's "desire to cause the chilling effect was a but-for cause of [his] action." <u>Id.</u> To establish causation, "a plaintiff must show 'a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward.'" <u>Id.</u> at 1234 (quoting <u>Hartman</u>

v. Moore, 547 U.S. 250, 265-66 (2006)).[6]

Probable cause exists "if the available facts suggest a fair probability that the suspect has committed a crime." United States v. Hartz, 458 F.3d 1011, 1018 (9th Cir. 2006) (citation and internal quotations omitted). The court weighs the circumstances from the viewpoint of a reasonable officer at the scene, not using 20/20 hindsight. Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (citation omitted). A police officer generally has the right to rely on information supplied by a citizen in determining probable cause, especially where that information is corroborated by a subsequent investigation. United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) (citation omitted); see also McKinney v. George, 726 F.2d 1183, 1187 (7th Cir. 1984) ("[i]f policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded") (citations omitted). Further, "[w]here one officer knows facts constituting reasonable suspicion or probable cause [and] he communicates an appropriate order or

_____

[6] Plaintiff cites to Dietrich v. John Ascuaga's Nugget, 548 F.3d 892 (9th Cir. 2008), in support of the proposition that "probable cause is not dispositive." Pl.'s Resp. to Mot. Summ. J. 11-12. Dietrich clarified that a plaintiff who exclusively alleges retaliatory arrest is not required to plead and prove the absence of probable cause; under those circumstances, the existence of probable cause merely "has high probative force." Dietrich, 548 F.3d at 901 (citations and internal quotations omitted). However, Dietrich reaffirmed that where, as here, the theory of liability is retaliatory prosecution, a showing a probable cause is required. Id.; Compl. ¶ 8.

Page 11 - OPINION AND ORDER

request, another officer may conduct [an] arrest" without violating
the Constitution. <u>United States v. Ramirez</u>, 473 F.3d 1026, 1037
(9th Cir.), <u>cert. denied</u>, 552 U.S. 866 (2007).

    Plaintiff's First Amendment claim fails for two reasons.
First, there is no meaningful evidence that defendants' citation or
prosecution of plaintiff was motivated by his speech or/and
expressive conduct.[7] Parrish Decl. at 6; Sapp Decl. at 8. Three
years elapsed between plaintiff's initial complaints against Sapp
and any allegedly retaliatory behavior, during which plaintiff and
Sapp had no contact. Further, at the time he cited plaintiff,
Parrish did not have any knowledge of the events that transpired in
2007. <u>Id.</u>; Second Reynolds Decl. Ex. 113, at 5; <u>see also</u> <u>Keyser v.
Sacramento City Unified Sch. Dist.</u>, 265 F.3d 741, 751-52 (9th Cir.
2001) (two-year period between the exercise of First Amendment
rights and the allegedly discriminatory conduct was insufficient to
establish retaliation).

    Sapp and Parrish only became involved with plaintiff on May
11, 2010 in response to a 911 call from Williams. Sapp Decl. at 2-
5; Parrish Decl. at 2. As Parrish and Sapp repeatedly communicated
to plaintiff during the traffic stop, he was not under arrest;
instead, they were investigating a citizen complaint, during which
they observed evidence of stolen property in plain view. Parrish
Decl. Ex. 111, at 2-25; <u>see also</u> <u>United States v. Struckman</u>, 603
F.3d 731, 741 (9th Cir. 2010) ("the fact that the police officers

---

    [7] The Court assumes, for the sake of analysis, that taking
real estate signs from public property falls within the purview
of the First Amendment.

went to the house in response to [the neighbor's] 911 report to
look around the area and, perhaps, ask questions was consistent
with what citizens expect from law enforcement"). Moreover, the
citation and prosecution of plaintiff were initiated prior to his
conversation with the Corvallis Gazette-Times. Compl. ¶ 8; Coulombe
Decl. at 2. Based on these undisputed facts, the Court cannot
conclude that defendants' desire to chill plaintiff's
constitutionally-protected speech was the but-for cause of their
allegedly wrongful actions.

Second, plaintiff cannot establish a lack of probable cause.
Sapp intercepted two complaints on May 11, 2010, regarding
plaintiff. Both Rodgers and Williams similarly relayed that
plaintiff had removed a real estate sign from public property and
engaged in an angry confrontation. Rodgers Decl. at 2; Williams
Decl. at 2-3; Sapp Decl. at 3-4. In between Rodgers' and Williams'
911 calls, Sapp spoke with plaintiff and explained that he was not
authorized to take temporary signs from public right-of-ways. Sapp
Decl. at 3-4. Sapp's discussion with plaintiff was informed by two
prior instances:

> in May 1007, I was involved in a case where a person was
> charged with Criminal Mischief in the First Degree for
> tampering with and destroying signs that were placed on
> public property . . . during a briefing after that
> incident in 2007[,] the conclusion was that the City Code
> did not allow a person to remove or destroy temporary
> signs, such as real estate for sale signs, located on
> public property. Second, I spoke with my shift sergeant
> on May 11, 2010. He was familiar with the specific City
> Ordinances [plaintiff] was citing [and] advised me that
> he had spoken to the City Attorney about the City
> Ordinance . . . in his opinion, and in the City
> Attorney's opinion, the signs were not handbills or
> advertisements.

Page 13 - OPINION AND ORDER

Id. at 6-7; Coulombe Decl. at 2.

Sapp reiterated to plaintiff while he was stopped that, according to the City Attorney, the CMC did not insulate plaintiff from liability for taking real estate signs from public spaces, as those signs have value and belong to the companies that installed them. Parrish Decl. Ex. 111, at 18-31. Although plaintiff quarreled with Sapp over the scope of CMC 5.03.020.020 and CMC 5.03.020.060, he admitted to taking the Bula Realty signs that were in the back of his truck, and to removing the Keller Williams sign and placing it in Williams' front yard. Id. at 4-31, 38-39. These facts, combined with plaintiff's prior statements at the police department, led Sapp to conclude that plaintiff "should have known that he did not have reasonable grounds to believe that he had a right to interfere or tamper with the sign in the median in front of [Williams'] home." Sapp. Decl. at 7.

In determining that probable cause existed to cite plaintiff for Tampering with Property and Petty Theft, Sapp "relied on the City Attorney's opinion," as well has Williams' statements and his own observations and investigation. Id. at 4-7. Sapp expressed to Parrish that he "had established probable cause" and Parrish relied on Sapp's representation in issuing plaintiff citations. Id. at 5; Parrish Decl. at 3-4. Plaintiff has not set forth any argument or evidence to rebut Sapp or Parrish's sworn statements, beyond concluding that the CMC "expressly and unambiguously authorized him to remove the illegal signs." Pl.'s Resp. to Mot. Summ. J. 11-15 (citing Am. Picray Decl. at 6-12). Even accepting that plaintiff

had such a right does not resolve whether he tampered or interfered with Keller Williams' real estate sign, with the intent to cause substantial inconvenience to Keller Williams or Williams, or took Bula Realty property totaling less that $50.[8] CMC 5.03.090.030.02, 5.03.090.050.

Thus, given the totality of circumstances, Sapp and Parrish possessed probable cause to cite plaintiff for Tampering with Property and Petty Theft. Nevertheless, even assuming that such probable cause was lacking, all of the facts in Parrish and Sapp's possession at the time plaintiff was cited indicated that plaintiff was not authorized to the remove the Bula Realty signs in the back of his truck or from the median in front of Williams' residence. See United States v. Black, 482 F.3d 1035, 1038 (9th Cir. 2006), cert. denied, 552 U.S. 1023 (2007)("[w]hether the actions of the police are objectively reasonable is to be judged by the circumstances known to them"). In other words, the record before the Court clearly demonstrates that Sapp and Parrish reasonably believed that their conduct complied with the law, such that qualified immunity attaches. Defendants' motion is granted as to plaintiff's First Amendment claim.

B.   Fourteenth Amendment Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and

_____

[8] Plaintiff contends, for the first time in his opposition, that he would have returned Bula Realty's signs but for defendants' interference. As such, it is undisputed defendants did not become aware of this fact until well after the dispositive time frame.

those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citation omitted).

Plaintiff's Fourteenth Amendment claim is difficult to decipher, in large part because he asserts divergent theories of liability in each of his filings. In his complaint, plaintiff alleges that his due process rights were violated because defendants "continued to prosecute" him until June 2012, despite the fact that he "was unrepresented," the City "retained the services of an attorney," and the CMC was amended in September 2011 to "exemp[t] real estate and other commercial advertising signs other than 'handbills' from the provisions of Ordinance 5.03.020.030 and Ordinance 5.03.020.060." Compl. ¶¶ 10-11. Plaintiff does not address this claim in his opposition, other than to argue generally that the City "authorized [his] prosecution [through] Parrish and later through City Attorney Coulombe, and resisted its dismissal for over two years." Pl.'s Resp. to Mot. Summ. J. 12-13. Plaintiff's declaration is likewise silent concerning the Fourteenth Amendment; he nonetheless concludes that, "by their extended detention and issuing of citations, [defendants] violated the Fourth Amendment to the U.S. Constitution; Articles 1 Section 20 of the Oregon Constitution; as well as ORS 161.190; ORS 161.195; ORS 161.105; ORS 161.115; and ORS 164.035." Am. Picray Decl. at 7.

Regardless of the theory of liability, plaintiff's second 42 U.S.C. § 1983 claim fails as a matter of law. Presuming that

plaintiff could amend his complaint via his response brief or declaration, he misstates the underlying facts. See Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008), cert. denied, 556 U.S. 1281 (2009) ("where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"). The Municipal Court, against which no allegations of wrongdoing are made, authorized Coulombe to appear on behalf of the City, pursuant to Or. Rev. Stat. § 153.076(6), because "[t]he issues raised by [plaintiff] are not issues in the normal course of violation matters, and police officers are not prepared to respond to Motions for injunctive relief." Coulombe Decl. Exs. 105-06. Defendants did not prolong plaintiff prosecution until June 2012: on August 6, 2010, the Municipal Court sent a letter notifying the parties that it would issue a ruling on plaintiff's pro se motion by no later than August 20, 2010; that the Municipal Court never issued such a ruling, and instead forgot about the case until plaintiff's counsel moved to dismiss in April 2012, does not implicate any misconduct on behalf of defendants. Coulombe Decl. Exs. 108-09 & 114.

As discussed above, the citation and prosecution of plaintiff were either based on probable cause or shielded by qualified immunity. See Picray v. Sealock, 138 F.3d 767, 769-71 (9th Cir. 1998) (due process claims are "not cognizable under § 1983" if the plaintiff's "arrest and imprisonment conformed [with the Constitution]") (citations omitted); see also De Anda v. City of

Page 17 - OPINION AND ORDER

Long Beach, 7 F.3d 1418, 1422 (9th Cir. 1993) (the dismissal of a plaintiff's criminal charges "does not make the existence of probable cause more or less likely"). To the extent plaintiff contends the traffic stop constituted an illegal restraint on his liberty, his argument is unavailing. See United States v. Collom, 614 F.2d 624, 628 (9th Cir. 1979), cert. denied, 446 U.S. 923 (1980) (reasonable suspicion exists for a traffic stop "when the detaining officer is aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the law is being broken") (citation and internal quotations omitted).

Finally, the September 2011 amendment of the CMC - to make more explicit that real estate signs are not subject to the citizen enforcement provision - in no way reflects improper ex post facto application of the law. See Garner v. Jones, 529 U.S. 244, 249-50 (2000) (ex post facto clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission") (citations omitted); see also McClure v. Premo, 2013 WL 3347370, *6 (D.Or. June 28, 2013) (no ex post facto violation exists where the law, as amended, does not "appl[y] to events occurring before its enactment" or "produc[e] a sufficient risk of increasing the measure of punishment") (citations and internal quotations omitted). Defendants' motion is granted as to plaintiff's Fourteenth Amendment claim.

C.  Monell Liability

Liability under 42 U.S.C. § 1983 cannot be premised on a

Page 18 - OPINION AND ORDER

respondeat superior theory; a municipality may only be held liable if the entity itself acted illegally through a policy or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978). "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989).

As a preliminary matter, plaintiff did not allege the existence of a City policy or custom that was the moving force behind the constitutional violations at issue in this case. Compl. ¶¶ 4-8. In an attempt to cure this deficiency, plaintiff argues in opposing summary judgment that "the affidavit of Jonathan Sassaman, asserting that the City has no practice of allowing retaliatory prosecutions of violation of First Amendment rights, is [false and] clearly inaccurate" because, in addition to being issued two citations in May 2010, he was arrested in April 2000 while collecting signatures in a grocery store parking lot and former City police officer David Cox "arrested one Brian Noakes, and numerous others for DUII without probable cause," in May 2007. Pl.'s Resp. to Mot. Summ. J. 13-14 (citing Am. Picray Decl. at 7-8; Force Decl. Exs. 2-3). Because he has not moved for leave to amend the complaint, and there is currently no allegation of any illegal municipal policy or custom, plaintiff's opposition is immaterial. Navajo Nation, 535 F.3d at 1080; see also Wasco Prods., Inc., v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir.), cert. denied, 549 U.S. 817 (2006) ("summary judgment is not a procedural second

chance to flesh out inadequate pleadings") (citation and internal
quotations omitted).

As addressed herein, plaintiff has not identified any facts
indicating that Parrish or Sapp acted in an unlawful manner; he
also misreads the evidentiary record. Sassaman, the City's Chief of
Police since June 2012 and the Captain of the City Police
Department in May 2010, provided uncontradicted testimony that, "as
of May 11, 2010, the City did not have a policy, practice or
custom" of: (1) "having its law enforcement officers violate the
provisions of the U.S. Constitution"; (2) "having its law
enforcement officers issue a citation to a person absent probable
cause"; (3) "intiat[ing] and maintain[ing] a criminal prosecution
of a person for any improper purpose"; (4) "disregarding a
plaintiff's right to a speedy trial under the laws of the State of
Oregon"; (5) "intimidating anyone from speech and advocacy"; (6)
"prosecut[ing] someone by ex post facto application of a law"; or
(7) "restrain[ing] a person's liberty without due process of law."
First Sassaman Decl. at 2-3. Therefore, plaintiff's evidence from
2000 and 2007, years before the relevant time period and arising
out of disparate factual scenarios, is insufficient to create a
genuine issue of material fact.

Perhaps more importantly, both Cox and the officers that
arrested plaintiff in 2000 were disciplined because their actions
did not conform with the City's policies, procedures, or customs.
Second Sassaman Decl. at 2-3; Force Decl. Exs. 2-3. In other words,
the City did not ratify the supplemental conduct that plaintiff

identifies as the basis of his <u>Monell</u> claims. See <u>Price v. City of</u>
<u>Sutherlin</u>, 945 F.Supp.2d 1147, 1159-61 (D.Or. 2013) (no liability
attaches under 42 U.S.C. § 1983 where the officer's allegedly
unconstitutional conduct was not ratified by a supervisor); <u>see</u>
<u>also</u> <u>Hunter v. Cnty. of Sacramento</u>, 652 F.3d 1225, 1233 (9th Cir.
2011) ("municipal liability may be established by showing a
longstanding practice or custom which constitutes the standard
operating procedure of the local government entity," such as where
"evidence of repeated constitutional violations for which the
errant municipal officers were not discharged or reprimanded"
exists) (citations and internal quotations omitted). Defendants'
motion is granted as to plaintiff's federal claims.

III. <u>State Law Claim</u>

    Dismissal of plaintiff's federal claims does not automatically
deprive this Court of subject matter jurisdiction. <u>Carlsbad Tech.,</u>
<u>Inc. v. HIF Bio. Inc.</u>, 556 U.S. 635, 639 (2009). Rather, where a
district court dismisses "all claims over which it has original
jurisdiction," it may, in its discretion, "decline to exercise
supplemental jurisdiction" over pendent state law claims. 28 U.S.C.
§ 1367(c)(3); <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 940 (9th Cir.
2012). Here, the Court retains supplemental jurisdiction over
plaintiff's pendent malicious prosecution claim in order to resolve
this lawsuit in its entirety.

    As discussed in section II, Parrish had probable cause to cite
plaintiff for Tampering with Property and Petty Theft. See <u>Hartley</u>
<u>v. State Water Res. Dep't</u>, 77 Or.App. 517, 520, 713 P.2d 1060, <u>rev.</u>

denied, 301 Or. 78, 718 P.2d 744 (1986) ("the existence of probable cause is a complete defense to a claim for malicious prosecution") (citation omitted). Furthermore, based on the advice of the City Attorney and other City officials, Sapp "knew that the City did not interpret the Code to allow a person to remove or destroy temporary signs." Sapp Decl. at 6. Sapp discussed the City Attorney's interpretation of the CMC with plaintiff in Parrish's presence and immediately prior to Parrish issuing plaintiff a citation. Id.; Parrish Decl. Ex. 111, at 26-29.

Additionally, the undisputed evidence of record evinces that plaintiff was not prosecuted for an improper purpose. See Singh v. McLaughlin, 255 Or.App. 340, 352, 297 P.3d 514 (2013) (to demonstrate malicious prosecution, the plaintiff must prove, amongst other elements, "malice in instituting the proceedings"). In fact, plaintiff's opposition is wholly silent as to this element. Defendants' motion is granted as to plaintiff's state law malicious prosecution claim.

### CONCLUSION

Defendants' motion for summary judgement (doc. 23) is GRANTED. Defendants' request for oral argument is DENIED as unnecessary. This case is DISMISSED.

IT IS SO ORDERED.

Dated this _14_ of August 2015.

Ann Aiken
United States District Judge

Page 22 - OPINION AND ORDER